**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**DONALD RAY MILLER**                                                                           **PLAINTIFF**

**V.**                    **CASE NO.: 2:12CV00092 BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration[1]**                                            **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donald Ray Miller appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. For the following reasons, the decision of the Commissioner is AFFIRMED.

**I.**     **Background**

On June 3, 2010, Mr. Miller protectively filed for DIB and SSI, alleging disability beginning on May 2, 2010, due to open-heart surgery and heart problems. (Tr. 137) Mr. Miller's claims were denied initially and upon reconsideration. At his request, an Administrative Law Judge ("ALJ") held a hearing on June 22, 2011, at which Mr. Miller appeared by video teleconference with his attorney. (Tr. 23, 25) At the hearing, the ALJ heard testimony from Mr. Miller and a vocational expert ("VE"). (Tr. 24-41)

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. She has been substituted for named Defendant Michael J. Astrue under Fed.R.Civ.P. 25.

The ALJ issued a decision on August 10, 2011, finding that Mr. Miller was not disabled under the Act. (Tr. 11-17) On May 4, 2012, the Appeals Council denied Mr. Miller's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Miller was fifty years old at the time of the hearing. (Tr. 27) He had graduated from high school and had earned a vocational certificate in welding. (Tr. 27-28) He was 5'9" tall and weighed 207 pounds. (Tr. 137) He alleged work-related limitations due to back and wrist problems, shortness of breath, pain, and the residual effects of his heart surgery. (Tr. 34-37) Mr. Miller alleged depression, but had not seen a doctor for this condition. (Tr. 34)

## II.  Decision of the Administrative Law Judge[2]

The ALJ found that Mr. Miller had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 13) And she found that Mr. Miller had the following severe impairments: status post carpal tunnel release surgery of the right hand, status post three-vessel coronary artery bypass grafting following a myocardial infarction,

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g) (2005), 416.920(a)-(g) (2005).

and degenerative disc disease. (Tr. 13) The ALJ also found, however, that Mr. Miller did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 14)

The ALJ determined that Mr. Miller had the residual functional capacity ("RFC") to perform light work, except he could only occasionally bend, stoop, and crouch, and could perform no more than occasional twisting of the torso. He could do no overhead work and could not crawl, squat, or kneel. Mr. Miller could do frequent, but not consistent, grasping, gripping, and handling. (Tr. 14-16)

The ALJ determined that Mr. Miller could not perform his past relevant work as a general laborer, industrial truck operator, or welder. (Tr. 16) After considering VE testimony, the ALJ determined Mr. Miller could perform the jobs of cashier, finger print clerk, and housekeeping cleaner, which existed in significant numbers in the national economy. (Tr. 16-17) Accordingly, the ALJ found that Mr. Miller was not disabled. (Tr. 17)

The standard of review in this case is whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). In reviewing the record as a

whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

**III.    Analysis**

    A.    *Plaintiff's Arguments for Reversal*

Mr. Miller claims that the ALJ's decision was not supported by substantial evidence because: (1) he met Impairment Listing 4.04 for ongoing ischemic episodes; (2) the ALJ erred in her RFC assessment; and (3) the ALJ did not properly consider Mr. Miller's chronic pain. (#10)

    B.    *Impairment Listing*

A claimant has the burden of proving that an impairment or combination of impairments meets or equals a Listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

Mr. Miller argues that he met the requirements of Impairment Listings 4.04. To support this argument, he claims that on August 2, 2010, after his bypass surgery, he had an ejection fraction rate of 30-35%. (#10, at pp. 11-12) This assertion is simply not true. The record Mr. Miller points to for this assertion was dated August 12, 2010, but makes

clear the ejection fraction reading was from April 28, 2010, which was before his bypass surgery. (Tr. 295) Ejection fraction readings from after the bypass surgery show that Mr. Miller's ejection fraction was within the normal range. Mr. Miller's ejection fraction on October 14, 2010 was 55%. (Tr. 323, 326) Mr. Miller's ejection fraction on November 16, 2010 was 50%, which is just below the normal range. (Tr. 381)

Although Mr. Miller alleges he met an Impairment Listing for ongoing ischemic episodes, an electrocardiogram on November 16, 2010, showed no evidence of ischemia with exercise. (Tr. 381) Mr. Miller had no angina or wall motion abnormalities. (Tr. 381) The record shows that Mr. Miller did not meet or equal an Impairment Listing for ongoing ischemic episodes. He failed to meet his burden of proving that he met all of the listing's specified criteria.

C. *Residual Functional Capacity*

Mr. Miller argues that the ALJ erred in finding that he could perform the full range of light work. (#10, pp. 14-16) The ALJ did not find Mr. Miller capable of the full range of light work. (Tr. 14) Instead, the ALJ found an RFC for a limited range of light work, with a number of restrictions. (Tr. 14-16) The ALJ specifically noted that Mr. Miller's "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations." (Tr. 16)

The ALJ bears the primary responsibility for assessing a claimant's RFC. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). It is the claimant's burden,

however, to prove RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). In his brief, Mr. Miller cites the ALJ's decision, but fails to cite a single page of the record to support his argument. (#10, p. 14-16) Thus, he waived this argument by failing to cite the record for support. See *e.g.*, *Aulston v. Astrue*, 277 F. App'x 663, 664 (8th Cir. 2008)(declining to consider undeveloped argument that claimant met the requirements of a particular Listing); see also docket entry #9 ("Any argument in a brief that is not supported by relevant law and argument (with citation to relevant portions of the transcript) will be considered to have been waived by the briefing party.").

Even if the argument had not been waived, Mr. Miller has failed to acknowledge that the ALJ accounted for almost all of the claimed limitations. For example, Mr. Miller claimed he could do very little twisting. The ALJ limited him to occasional twisting of the torso. (Tr. 14) Mr. Miller claimed he could not repeatedly use his arms throughout the day. The ALJ limited Mr. Miller to no overhead work, with frequent, but not constant, grasping, gripping, and handling. (Tr. 14) Substantial evidence in the record supports the ALJ's RFC finding. Mr. Miller failed to prove any limitation greater than those the ALJ took into consideration.

D. *Credibility Determination*

Under 20 C.F.R. §§ 404.1529 and 416.929, an ALJ must consider all symptoms, including pain, and the extent to which those symptoms are consistent with the objective

medical evidence. An ALJ's conclusions may be upheld if the record as a whole supports them. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

Mr. Miller waived the credibility argument by failing, again, to support it with citation to the record. (#10, pp. 16-19) Regardless, there was no error in the ALJ's credibility analysis.

Mr. Miller claims that the ALJ should reconsider the impact of his chronic pain. (#10, at p. 17) But the ALJ did consider Mr. Miller's pain, and noted that the pain was controlled with medication. As the ALJ observed, Mr. Miller did not require ongoing physical therapy for pain; there was no evidence of a need for increasingly large doses of pain medication; he did not have nerve root compression or neurological defects; and he did not have any of the stigmata frequently observed in patients who suffer constant, unremitting pain. (Tr. 15) Mr. Miller did not take issue with any of these findings. Instead, he now argues:

> The Administrative Law Judge failed to articulate how evidence regarding Plaintiff's exertional limitations associated with Plaintiff's chronic chest pain, fatigue, dizziness, and dyspnea on exertion do not correlate with the ALJ's finding that the Plaintiff was capable of performing sedentary work. (#10, at p. 17)

The argument is not well taken. First, the ALJ found Mr. Miller capable of light work, not sedentary work. (Tr. 14) Second, why would the ALJ "articulate" how the evidence did "not correlate with the ALJ's findings"? It appears Mr. Miller is complaining that the ALJ's opinion was not internally inconsistent. Explaining how the

evidence did not match the ALJ's finding is exactly what Mr. Miller was supposed to do in his brief.  He failed, however, to cite a single instance of the alleged dizziness or fatigue evidenced in the record.  (#10)  And while he cited two records that mention dyspnea on exertion (#10, at pp. 3 and 5), both records show that dyspnea on exertion was not applicable.  (Tr. 295, 403)  In fact, medical records show that Mr. Miller repeatedly denied dyspnea.  (Tr. 291, 386, 400)

Mr. Miller clearly suffered from several severe impairments that precluded many activities, including all of his past relevant work.  Mr. Miller's argument regarding the credibility of his allegations of pain, however, did not further his cause.

### IV.   Conclusion

The Court has reviewed all of the evidence in the record, including the objective medical evidence, the opinions of physicians, and the hearing transcript.  There is sufficient evidence in the record as a whole to support the Commissioner's determination that Donald Ray Miller retained the residual functional capacity to perform jobs existing in significant numbers in the economy.

Accordingly, his appeal is DENIED, and the Clerk of Court is directed to close the case, this 3rd day of September, 2013.

_____
UNITED STATES MAGISTRATE JUDGE